Judge Marshall
delivered the Opinion of the Court.
Jacob Vanmetre having purchased one hundred acres of land from John Handley, of which he obtained the possession and received a conveyance with general warranty from Handley, afterwards contracted with John Taylor, who claimed the same land under an elder patent, for the purchase of a large tract including the one hundred acres, if Taylor should succeed in recovering the land. An ejectment was shortly afterwards commenced against him, on Taylor’s title, and judgment was ultimately confessed, reserving equity. A bill of injunction was filed, in the name of Vanmetre, which, after an answer from Taylor, was dismissed for want of prosecution. And within a few days afterwards, a writ of habere facias was returned, with an endorsement of the sheriff that he had delivered the possession to the plaintiff’s agent, and an endorsement by the agent, that he had redelivered it to Vanmetre, according to his contract with Taylor.
Of both these suits, Handley had notice, and although not a party to either of them, he employed an attorney to attend to them on the part of Vanmetre. It may, therefore, be inferred (as alleged by Vanmetre,) that he was privy to the confession of judgment in the ejectment. But there is no ground to suppose that he had any knowledge of the contract between Vanmetre and Taylor.
Immediately upon the dismissal of the first chancery suit, Vqnmetre filed another bill, praying to enjoin the judgment in ejectment; but on this bill there was no injunction, and no service of process, and it was ultimately dismissed.
*90 During the pendency of the last mentioned bill, Van-' metre brought an action of covenant against Griffith and George Handley, as administrators of John Handley, upon the covenant of warranty in the deed; and in that action, judgment was confessed for the amount of the purchase money, with interest, being then $699. In the progress of collecting this judgment, an execution was levied on a portion of the estate of John Handley, which was purchased in for Griffith, who became a party to the sale bond; and, by subsequent arrangement with Vanmetre, paid him one hundred dollars in money, and executed his own note for five hundred dollars, which was received in full satisfaction of the judgment. On this note, judgment was afterwards confessed by Griffith; and to enjoin this last judgment, or so muchas remained unpaid, he filed the present bill against Vanmetre, and George Handley, his co-administrator.
The facts which have been stated in relation to the contract between Vanmetre and Taylor, appear to have been unknown to Griffith when he executed his note for the five hundred dollars, and when he filed his original bill, which prayed for an injunction on other grounds. Several amended bills were filed going mainly upon the same grounds; and the injunction was, on" motion, dissolved with damages. By amended bills subsequently filed, and by the answers to them, the date and effect of' the contract with Taylor, the price given for his title, and the fact that the purchase money had been paid, and the deed executed, on the 28th day of January, 1831, after this suit was commenced, were brought distinctly before the Court. And on final hearing, the Chancellor being of opinion that Vanmetre was, in equity, entitled to nothing more upon his warranty from Handley, than the sum paid-for Taylor’s paramount title, and that he had received more than that sum from Griffith, calculating interest to the date of his payment to Taylor, decreed that he should refund the excess to Griffith, with interest, to the rendition of the decree.
To this decree Vanmetre objects, first—on the ground! that George Handley, the co-administrator with G riith,. ought to have been a co-complainant and not. a defendant; *91 second, that the Court erred in limiting his recourse upon Handley’s warranty, to the actual cost of procuring Taylor’s title to the land warranted; and third—that the Court erred in the amount assumed to have been paid to him by Griffith.
All persons interested in a chati eery suit should be parties; but whether, as complainants or defendants is not, in general, very material.
An adm’r brings suit to enjoin a judg’t upon his personal obligation: it was proper for him to sue alone; hutas the obligation, was given in satisfaction of a liability of the in-, testate, on whose equity he relies, his co-adm’r was a proper party, and was mado a def’t: the other def’t cannot complain thathis. co-del't is on the wrong side; he could not himself make that objection, after answering; he is. bound by the decree, and that is sufficient for the other defendant.
If a mortgagee, or trustee or tenant for life, or purchaser, being in possession. buys an outstanding Claim to the land, tho etlect oi tiie purchase is, to unite the titie so purehas ed, to ihe previous possession, and give the purchaser a claim, in equity, upon the party under whom he enter ed, for the aemal cost of the new title, with interest on it. Equity will not p.urnit him to retain the possession, and use his new acquired title, by suit upon his Wiirranty or oth erwise, against him from whom he acquired the right under which .he entered. So, in this case— where an adverse claim was set up against a purehas er in possession, and he made a contract for the purchase of tiiat ‘claim, in case it should be established, by due course of law, as the better title, and a judg’t was recovered upon it, and the ha. fa. was executed, but tho possession immediately restored to the def’t, according to his contingent contract—it is held, that the tenant’s 'right in equity against his first vendor, is to the amount of his second puichase witli interest only ; and having collected thus much, upon a judg’t he had obtained upon his warranty, he is enjoined from further proceedings on that.judg ment;
*91 As to the attitude of George Handle}' in the suit, Vanmetre has no right to complain. It is sufficient for him that Handley is a party to the suit, and is therefore bound by the decree. His own safety requires nothing more. And he has no concern with any question which may grow out of this decree, between Griffith and his co-administrator, or any others who may be interested in the estate of John Handley. There is in fact no decree against George Handley; and even he, after answering without objecting to his position as defendant, and without praying for any relief, has no right now to make any objection on that score. It is to be remarked, also, that the rules of chancery practice require only that all persons interested in the subject of the suit shall be made parties. Whether particular individuals should be, complainants, or defendants, must depend on the nature of their interests and on other circumstances belonging to the case. Various circumstances may exist which would render it proper for one administrator to sue his co-administrator in chancery, though the complainant has no other interest in the subject of the suit but as administrator. And from the statement already made, it is apparent, that although the individual interest of Griffith in the subject may be, to some indefinite extent, identified, or at least connected with that of the estate of which he is administrator, it is sufficiently distinct and separate to authorize him to sue as sole complainant. Indeed, the judgment enjoined is against him alone, in his individual character, and this rendered it proper for him to sue alone; while the connection of his assumed liability with the affairs of the estate made it proper that the other administrator should be a party.
Second. The principle assumed as the basis of the decree, is, in our opinion, substantially correct. It may be conceded, that judgment would have been rendered against Vanmetre in the ejectment case, if it had not been con *92 fessetl, and that if the suit in chancery liad been duly prosecuted, a regular decree -would have passed in favor of Taylor’s equity. In fine, it may be admitted, that Taylor held the paramount legal and equitable title; and that the writ of habere facias was actually executed by turning Vanmetre out, and delivering the possession to Taylor’s agent, who immediately redelivered it to Vanmetre, under the contract made between him and Taylor, before the ejectment was commenced; And the question is, whether Handley, under whose sale and warranty, Vanmetre had previously acquired and held tho possession, is to be wholly excluded from the benefit of this contract, made by his vendee in possession, and for the security of that possession. Can a vendee before eviction, and even before suit against him, provide by contract with the holder of a paramount claim, a muniment for the possession derived from his vendor, which shall not also operate as a muniment to the title derived from the same source? Can he, while he thus continues in possession, form any connection with the holder of an adversary title, to the disadvantage of his vendor, or by which he may gain at the expense of his vendor’s loss?
It is not disputed that* if a vendee, before eviction, purchase in an outstanding paramount title and receive a deed, he cannot continue in possession under his first purchase, and claim damages as for a breach of warranty-, on account of the title Ire lias acquired; In the case of Morgan's Heirs vs. Boone's Heirs, &c. 4 Mon. 297,it was laid down by the Court, that if a vendee acquire a paramount title under such circumstances, the most he can do, in equity, is to show the advances made, and claim to be considered as the agent and trustee of the vendor, in acquiring the adverse title; or (if the vendor refuse so to consider him,) to surrender the possession acquired from him, and use the newly purchased title in warfare* He cannot continue in possession and set up the new title in hostility to the old;
On the fullest reflection which we have been able to bestow upon the subject, we perceive no difference in principle between -the present case, and a case in which *93 Lhe vendee actually acquires the outstanding title before eviction or suit. Here indeed the original contract for the outstanding title was conditional: Vanmetre was not to pay for and receive Taylor’s title until it had been proved to be paramount in the ordinary course of litigation. But by that contract, he secured the purchase of Taylor’s title at a stipulated price, in the only event in •which it would be valuable, and by thus securing the benefit of the title, if it should prove to bo paramount, he secured against it his possession derived from Handley. The subsequent litigation cannot be considered as having been commenced or prosecuted by Taylor, for the purpose of recovering the land from Vanmetre, for in the event of its appearing that he was entitled to die land, he had already bound himself to convey it to Vanmetre, and thus secure him in the possession. It is made manifest by the proceedings on the wrrit of habere facias, that such was the object of the suit and the effect of the contest. So far as Taylor was concerned in the litigation which followed the execution of the contract, his object was not the actual eviction of Vanmetre from the land, but the establishment of the superiority of his own title, as the contingency on which the sale was to take effect. There was not, and in truth could not be, any real bona fide eviction by an adverse, paramount title, after such a contract for the purchase of that title by the tenant in possession. However serious the contest may have been, as between the titles of Taylor and Handley, it was, so far as regarded Vanmetre and 'the possession held by him, entirely friendly. By the contract, conditional though it was, his possession was secured, and he had a -contingent interest in the outstanding title. So soon as that title w-as ascertained or admitted to be paramount by the judgment of the Court, the contract became absolute, and the interest of Vanmetre was freed from the condition. From that moment,-if not from the date of the contract, the title of Taylor-must be regarded, in equity, as being united to the possession of Vanmetre. And the subsequent proceedings on the writ of habere facias, being under a title which was held in trust for Vanmetre,-being on their face.mere -formalities, so *94 far as a change of the possession was in questioh, and being, in intention and effect, for the benefit of Vanmetre, did not in fact change the possession, so as to make it independent of Handley’s title under which it had been previously held, and to release Yanmetre from the relation which subsists between a vendee in possession and his vendor.
If a judgment obtained under such circumstances, and the effect of which, by operation of a previous contract made by the vendee, is to confirm the existing possession by uniting the paramount title to it, shall be allowed to have the further effect of severing the possession from the title under which it was originally held, and rendering the original vendor liable upon his warranty, as for an eviction, whereby the vendee, besides the advantage pf continuing in possession, may gain the difference between the amount recoverable upon the warranty, and the sum which he has given for the paramount title, it is obvious, that he will have gained this advantage at the expense of his vendor, by a contract made while he was certainly in possession under the vendor’s title, and while the obligations of fidelity and good faith belonging to the condition of a vendee in possession under warranty, were resting upon him in their full force and vigor. To establish such a consequence, would be to admit that a vendee in possession may, by a contract made for his exclusive benefit, place himself in hostility to the title under which he acquired and holds possession; and that he may, by means of the title and possession derived from his vendor, obtain an advantage at the expense and by the loss of the vendor.
The first of these admissions would sanction a state of things utterly inconsistent with that perfect fidelity between vendor and vendee which the law enjoins and professes to enforce, and would break down the most ef. foctual barrier which has been, or can be, erected for its preservation. The other would be in direct violation of that general principle of honesty which has been adopted and enforced by Courts of Equity, and which, as stated in the case already referred to, (Morgan's Heirs vs. Boone's Heirs, 4 Mon. 297) enjoins 'that, “if a trustee, *95 <{ mortgagee, tenant for life, or purchaser, gets an advan- “ tage by being in possession, or behind the back of the “ party interested, and purchase in an outstanding title,. “ or incumbrance, he shall not use it to his own benefit^ “ and the annoyance of him under whose title he entered, “ but shall be considered as holding it in trust.” This principle is essential to the protection of the bona fide vendor, as by giving him the benefit of any contracts which his vendee may make, to disembarrass the title, it unites, indissolubly, the intei’ests of both in the maintainance of the title and possession which has been transmitted from the one to the other. And the same principle being applied to the contracts of both parties, constitutes the real essence of that fidelity which is due from each party to the other.
Third. With regard to the third point, it is sufficient to say that, giving to the pleadings on each side their due effect, according to the settled rules of chancery practice, the amount assumed in the decree to have been paid by Griffith to Vanmetreis not too large.
Wherefore, the decree is affirmed,